22 So.3d 659 (2009)
818 ASSET MANAGEMENT, INC., Appellant,
v.
Judy NEIMAN, Appellee.
No. 3D08-97.
District Court of Appeal of Florida, Third District.
October 28, 2009.
Rehearing Denied December 8, 2009.
Arthur J. Morburger, Miami, for appellant.
Michael Seth Cohen, Coral Gables, for appellee.
Before WELLS and SHEPHERD, JJ., and SCHWARTZ, Senior Judge.
PER CURIAM.
Affirmed.
WELLS, J., and SCHWARTZ, Senior Judge, concur.
WELLS, J., (specially concurring).
I concur in the affirmance of the trial court's order denying 818 Asset Management, LLC's Rule 1.540 motion to set aside a default judgment. I find no merit to the company's claim that it had not been properly served with process, and thus conclude that no abuse of discretion has been demonstrated. See H & F Tires, L.P. v. D. Gladis Co., Inc. 981 So.2d 647, 649 (Fla. 4th DCA 2008) ("[T]he standard of review for an order denying a motion to vacate a default judgment is abuse of discretion." (quoting Top Dollar Pawn Too, Inc. v. King, 861 So.2d 1264, 1265 (Fla. 4th DCA 2003))).
818 is a limited liability company which pursuant to section 608.463, Florida Statutes (2007), may be served with process "[i]n accordance with chapter 48 or 49, as if [it] were a partnership." Section 48.061(2), Florida Statutes (2007), governing service of process on partnerships provides that where "service cannot be made on [a partnership] agent because of failure to maintain such an agent or because the agent cannot be found or served with the exercise of reasonable diligence, service of process may be effected by service upon the Secretary of State as agent of the limited partnership as provided for in s. 48.181."
The undisputed facts pertinent to this appeal are as follows. In 2004, Judith Neiman sold her condominium to 818, taking back a promissory note in the amount of $115,000 secured by a mortgage on the condominium. 818 defaulted on the note in 2006 by failing to make monthly payments, by failing to pay condominium association assessments, and by failing to pay real property taxes, a failure which resulted in issuance of tax certificates for 2004 and 2005.
In February 2007, Neiman sent notices of default to 818 by certified return receipt *660 mail to both the condominium unit purchased by 818 and the address 818 listed with the Secretary of State as the address of its registered agent. Both notices were returned as undeliverable. The following month, Neiman brought suit to collect on the note and to foreclose the securing mortgage.
In April, Neiman attempted to personally serve Esther Counné, 818's registered agent and sole manager, with a summons and complaint at the address 818 had listed with the Secretary of State as that of its registered agent. Service could not be affected because 818's registered agent was no longer at the listed address and because no other address had been provided to the Secretary of State. Neiman also attempted to serve Counné at the condominium unit, the condominium at which Counné claimed in her 1.540 motion she resided at all material times.
Unable to locate 818's agent at either its registered address or the residence of its sole manager and agent, Neiman served the Secretary of State under the provisions of section 48.181, which accepted service on 818's behalf. Neiman once again attempted to provide notice to 818 by certified return receipt mail at both 818's registered agent office and the condominium where Counné lived. Again, both mailings were returned as undeliverable.
On this record it is clear that Neiman satisfied all section 608.463 and 49.061 requirements. Counné claims, however, that because (1) Neiman knew that Counné lived in the condominium that is the subject of this suit; (2) Counné had made and Neiman had accepted two mortgage payments after this suit was brought; and (3) before and after the instant action was brought, Neiman and Counné were in "regular" telephone contact, that service on her via the Secretary of State was defective:
4. The parties, Ms. Neiman and Ms. Counné, were in regular, if not frequent, telephone contact with each other both before and after the initiation of this action.
5. From the date of the giving of the mortgage through the present date, Ms. Neiman always knew that Ms. Counné occupied the subject premises as her full time residence.
. . . .
8. Specifically, this action was commenced on March 30, 2007; thereafter, Ms. Counné paid, and Ms. Neiman accepted, payments [on April 6 and June 6, 2007].
. . . .
16. Florida Statute 48.181 only permits service of process upon the Secretary of State as agent for "any person who is a resident of the state and who subsequently becomes a nonresident of the state or conceals . . . her whereabouts. . . .". [sic]
Counné concedes that section 48.181, Florida Statutes (2007), provides that any person doing business in this state as a partner agrees to service of process on the Secretary of State if that person is concealing his or her whereabouts:
. . . [A]ny person . . . who is a resident of the state and who . . . conceals his or her whereabouts . . . [and who accepts] the privilege . . . to operate, conduct, engage in, or carry on a business . . . constitutes an appointment . . . of the Secretary of State . . . as their agent on whom all process in any action . . . arising out of any transaction or operation connected with or incidental to the business or business venture may be served. . . .
Counné argues however that a factual dispute remains as to whether she concealed her whereabouts. I disagree. Of *661 course Neiman knew that Counné lived at the condominium at issue, Neiman attempted to serve her there multiple timesall without successover a period of many months. The fact that Counné made some payments to Neiman during this period and spoke to Neiman one time while Counné was in Canada, as Counné asserted, also does nothing to establish that Counné was not concealing herself. Payments do not establish whereabouts, and while Counné may have spoken to Neiman at some point while she was in Canada from May through September of 2007, Counné does not claim that Neiman initiated the call or had any knowledge as to where and how to contact her. Counné also does not state that she ever told Neiman where in Canada, with its territory of approximately 3.8 million miles,[1] she could be located.
Moreover, the record is that from February through September of 2007, a period spanning eight months, Counné, the sole registered agent and manager of this partnership, did not claim her mail while at home and made no arrangements whatsoever to either have it forwarded or to otherwise obtain it. In short, Counné's motion fails to raise a fact issue regarding concealment.
I certainly see no similarities between the facts of this case and those in All Mobile Video, Inc. v. Whitener, 773 So.2d 587 (Fla. 1st DCA 2000). In that case, the plaintiff had successfully initiated contact with the defendant and had received a written response from the defendant advising that the defendant was represented by counsel. These contacts confirm that the plaintiff knew how and where to locate the defendant to either obtain information about services of process or to effectuate it. The plaintiff also had spoken to a number of defendant's employees and had been in contact with the defendant's insurance company. Yet despite all of these frequent contacts, and knowledge as to where the defendant could be found, the plaintiff secured a default after she was unable to locate the defendant's registered agent, apparently a defunct law firm. On these facts, the default secured by the plaintiff was reversed.
Nothing similar was alleged under oath to have happened here. Rather, Counné's insupportable conclusion that she could always be located at the condominium where she lived whenever she was here combined with her vague claim that she had talked once with Neiman while in Canada and had made a couple of mortgage payments does not give rise to a dispute that would entitle her to relief from the instant judgment.
Accordingly, and because I find no merit in 818's remaining argument, I join in the decision to affirm the order denying 818's 1.540 motion.
SHEPHERD, J., dissenting.
I respectfully dissent.
This is an appeal from an order denying Appellant's, 818 Asset Management, LLC, Sworn Motion to Set Aside Default and Final Judgment of Foreclosure. Appellee, Judy Neiman, was the purchase money mortgagee on the sale of the foreclosed property, a condominium unit located in Miami Beach, to 818 in March 2004. Neiman alleged in her foreclosure complaint that 818 had defaulted under the terms of the mortgage, by failing to make the required monthly mortgage payments.
Unable to serve 818 either at the location of its purported resident agent or the *662 condominium unit,[2] Neiman sought to serve the company by substituted service of process, pursuant to section 48.181(1) of the Florida Statutes (2007), alleging that "[818] ha[d] concealed its whereabouts while engaging in or carrying on a business venture within the State of Florida." 818's sole principal and managing member, Esther Counné, countered in 818's sworn motion that Neiman at all times knew of her whereabouts, including the critical period during which the substituted service was made and the required statutory notice was mailed to her. See § 48.161(1), Fla. Stat. (2007). Because this sworn testimony is unrebutted by Nieman, I believe we legally are compelled to reverse the order appealed and remand with directions to vacate the final judgment of foreclosure.[3]
818 is a limited liability company, created pursuant to the Florida Limited Liability Company Act. See §§ 608.401-.705, Fla. Stat. (2007). Florida limited liability companies are required by law to "have and continuously maintain in this state: (a) `A registered office' and `(b) A registered agent.'" § 608.415(1)(a)-(b) Fla. Stat. (2007). Florida limited liability companies also must report and keep current the address of the registered office and name of the registered agent in the records of the Florida Secretary of State. § 608.416, Fla. Stat. (2007). A breach of this obligation by a Florida limited liability company constitutes the appointment of the Secretary of State as the company's substituted agent for service of process. See § 48.181(1); All Mobile Video, Inc. v. Whitener, 773 So.2d 587, 589 (Fla. 1st DCA 2000). In this case, Neiman's attempt to serve process on 818 at the address recorded with Florida's Secretary of State was returned unexecuted because, according to the return of service, "[neither the] corporation [n]or registered agent are [] located at [this] address." As a matter of law, then, 818 designated the Florida Secretary of State as its resident agent for the service of process. See § 48.181(1).
In such a case, a plaintiff can elect to effectuate service on the Florida Secretary of State by (1) serving the public officer designated by law; (2) sending notice of service and a copy of the process by registered or certified mail to the defendant; and (3) filing the defendant's return receipt and an affidavit of compliance. See § 48.161(1), Fla. Stat. (2007); All Mobile Video, 773 So.2d at 589. Neiman satisfied the first pre-requisite for proper service by serving the Florida Secretary of State. She attempted to satisfy the second pre-requisite by mailing a copy of the notice of service and the process by certified mail to Counné at the registered office address where attempted service of process already had been unsuccessful, and also the condominium unit in foreclosure.[4] However, *663 taking as trueas we mustthe averments in Counné's Sworn Motion to Set Aside Default and Final Judgment of Foreclosure, that she had "regular, if not frequent, telephone contact [with Neiman] both before and after the initiation of this action," and that "she continued making mortgage payments after the initiation of the foreclosure action and Ms. Neiman accepted such payments," allegedly including two payments during the period her counsel was effectuating service on 818, Neiman's failure to follow an obvious lead to Counné's whereaboutsasking Counné herselfrenders the attempted service invalid.
The facts of this case closely mirror All Mobile Video. In All Mobile Video, as in the case before us, the plaintiff sought to effectuate substituted service of process on All Mobile Video pursuant to sections 48.181(1) and 48.161(1) of the Florida Statutes (1999). Id. at 588. As in our case, the corporate defendant was without a locatable registered agent in Florida. Id. However, the plaintiff, her counsel, and her insurance carrier were all in contact with representatives of the defendant's New York office. Id. However, when it came time to satisfy prong two of section 48.161(1), the plaintiff chose to send the required notice of service and the process to the address of a long since defunct, former law firm designated as All Mobile Video's resident agent in the State of New York, rather than to the company's current office. Id. at 588-89. All Mobile Video learned of the default taken against them after the plaintiff so advised All Mobile Video's insurance company. Id. at 589. The First District Court of Appeal reversed the order of default, stating defendant's failure to accurately register the business's listing with the New York Department of State did not excuse the plaintiff from his burden "to use knowledge at [his] command and exercise due diligence in attempting to notify [the defendant] of the suit." Id. at 590. The court explained that "to comply with section 48.161, plaintiffs who seek to employ substituted service but fail to obtain a return receipt must allege that the defendant is `concealing his whereabouts, or that they had exercised due diligence in attempting to locate him.'" Id. (quoting Chapman v. Sheffield, 750 So.2d 140, 143 (Fla. 1st DCA 2000)). Plaintiffs also must "reasonably employ knowledge at [their] command so that, if possible, the defendant will have notice of the suit." All Mobile Video, 773 So.2d at 589 (citing McAlice v. Kirsch, 368 So.2d 401, 403 (Fla. 3d DCA 1979) ("When a complainant resorts to constructive service, he should make an honest and conscientious effort, reasonably appropriate to the circumstances, to acquire the information necessary to fully comply with the controlling statutes.")).[5]
*664 In the case before us, Counné attested in her sworn motion that she was in "regular, if not frequent, telephone contact" with Neiman during the time Neiman was effectuating substituted service process on Counné via section 48.161(1) of the Florida Statutes. That testimony is unrebutted. It also is clear from the record that Neiman knew or should have known that Counné was the managing member of 818. At no time during this period did Neiman seek to obtain from Counné her current address (or, if it be the case, why it was not possible to do so). Counné's failure to accurately register 818's resident office and agent with the Florida Secretary of State did not excuse Neiman from her obligation to use the knowledge at her command to see that 818 received actual notice of the action. For this reason, I would reverse the order denying 818's Sworn Motion to Set Aside Default and Final Judgment of Foreclosure.
NOTES
[1] Bruce Pardy, Climate Change Charades: False Environmental Pretences of Statist Energy Governance, 26 Windsor Rev. Legal & Soc. Issues 179, 204 n. 37 (2009).
[2] The concurrence contends Neiman "attempted to serve Counné [at the condominium] multiple times . . . over a period of many months." See supra p. 661. That is not so. Neiman made but a single attempt to effectuate service on Counné at that locationon April 26, 2007. The return states: "Unit 3D Unable to make contact with anyone at address." The only other attempt at personal service on Counné was the unsuccessful attempt to serve the resident agent, also on the same date, immediately before proceeding to Counné's home. On this meager effort, Neiman abandoned personal service and, instead, proceeded to substitute service.
[3] Neiman was the purchaser at the judicial sale. Thus, there is no concern over a purchase by an innocent third-party purchaser of the property in this case. Cf. De Vico v. Chase Manhattan Bank, 823 So.2d 175, 175-76 (Fla. 3d DCA 2002).
[4] It appears this certified mailing, which occurred on May 29, 2007, and one other Neiman's certified mailing of a demand letter on February 9, 2007, forms the entire basis for the concurrence's sweeping conclusion at page five that for "a period spanning eight months, Counné [from February through September, 2007] . . . did not claim her mail while at home and made no arrangements whatsoever to either have it forwarded or to otherwise obtain it."
[5] Other cases from this district express the same sentiment or apply the same principle. See, e.g., Hanna v. Millbyer, 570 So.2d 1087, 1087 (Fla. 3d DCA 1990) (reversing order denying a motion to quash substituted service of process on the basis the plaintiffs presented insufficient evidence to establish due diligence of existence of concealment); Torelli v. Travelers Indem. Co., 495 So.2d 837, 838 (Fla. 3d DCA 1986) (reversing an order denying a motion to set aside a default final judgment where the injured plaintiff failed to make inquiry of the defendant's known attorney); Leviten v. Gaunt, 360 So.2d 112, 113 (Fla. 3d DCA 1978) (reversing order denying motion to quash service of process where the plaintiff who alleged the defendant "concealed her whereabouts" failed to pursue two individuals whose names and addresses were provided to the plaintiff by the defendant's parents); Bird v. Int'l Graphics, Inc., 362 So.2d 316, 317 (Fla. 3d DCA 1978) (reversing denial of motion to vacate default judgment on the basis the failure of the sheriff and a process service to locate the defendant at three different addresses furnished by the plaintiff was not enough to establish concealment); Fleischman v. Morris, 260 So.2d 278, 279 (Fla. 3d DCA 1972) (reversing order denying motion to vacate default and final judgment where affidavit and record reflected sufficient search and inquiry was not made to ascertain whether appellants were concealing their whereabouts).